IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALAN HANDROCK and CAROLYN MARY HANDROCK,<br><br>        Plaintiffs,<br><br>    v.<br><br>OCWEN LOAN SERVICING, LLC<br>And EXPERIAN INFORMATION<br>SERVICES, INC.,<br><br>        Defendants. | Case No. 16 C 5732<br>Case No. 16 C 5733<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Experian Information Solutions, Inc.'s Motion to Dismiss the Complaint pursuant to FED. R. CIV. P. 12(b)(6). [ECF No. 27]. For the reasons stated herein, the Motion is denied.

## I. BACKGROUND

The following facts are contained in the Plaintiffs' Complaints and attached exhibits. They are presumed true for purposes of deciding the motion to dismiss. *See, Forrest v. Universal Sav. Bank, F.A.,* 507 F.3d 540, 542 (7th Cir. 2007).

Husband and wife Alan and Carolyn Mary Handrock, Plaintiffs in this consolidated case (hereinafter, "Plaintiffs" or "Handrocks"), filed for bankruptcy on April 20, 2013. One of the debts involved in their bankruptcy was a mortgage loan

secured by the couples' residence. Defendant Ocwen Loan Servicing, LLC ("Ocwen") serviced the loan, while Defendant Experian Information Solutions, Inc. ("Experian"), a credit reporting agency, maintained and reported information on the loan as part of Plaintiffs' credit history. In their bankruptcy plan, Plaintiffs proposed to surrender the residence and thereby extinguish Ocwen's claim against them. The Bankruptcy Court confirmed the Plaintiffs' plan on June 28, 2013.

Eleven months later, on May 28, 2014, the court entered an Order of Discharge in Plaintiffs' case. Plaintiffs thereafter sent credit dispute letters to Experian. They requested that Experian update their credit files to reflect that their debts had been discharged through bankruptcy and to report a zero current balance on those debts.

In responding to the letters, Experian generated and mailed to Plaintiffs a report that is one of three reports underlying Plaintiffs' claim in this case. The report showed that the Ocwen account has a balance of $0.00 as of June 2014, that the status of the account was "Discharged through Bankruptcy Chapter 7," and that the Account History stated "Debt included in Chapter 7 Bankruptcy on May 28, 2014." *See, Alan Handrock v. Ocwen,* 16 C 5732, ECF No. 1 ("Compl."), Ex. I ("First Report"). However, the month-by-month Account History showed a scheduled payment amount of $1,525.00 for each of the months from April

2013 to April 2014, or the period from when Plaintiffs first filed for bankruptcy to the month before the Discharge Order was entered. The Payment History section also showed the number 180 under each month from September 2013 to April 2014, presumably reflecting that the account was more than 180 days overdue during this time.

Plaintiffs claim that the report was inaccurate. According to Plaintiffs, the Ocwen account should have reported "the status of the subject loan without a negative payment history for the months following Plaintiff's bankruptcy filing." Compl. ¶ 33. This is because "Ocwen could no[t] collect payments for the subject loan after Plaintiff's bankruptcy filing in April 2013." *Id.* Furthermore, "Plaintiff no longer had any personal liability for the balance of the subject loan" after his and his wife's bankruptcy plan was confirmed on June 28, 2013. *Id.*

Some six months later, the Plaintiffs sent Experian yet another pair of dispute letters, this time specifically disputing the accuracy of the Ocwen account. Experian mailed them back an updated report. This report contained the same scheduled payment and 180 days past due information on the Ocwen account as did the First Report. *See,* ECF No. 1, Ex. K ("Second Report").

Alan Handrock ("Alan") obtained a copy of his personal credit report on February 15, 2016. *See,* Ex. L ("Third

Report"). This report contained two tradelines for the same Ocwen loan, one of which Plaintiffs say is correct. The second tradeline, however, reported a recent balance of $192,392.00 and a monthly payment of $1,526.00. *See,* Compl. ¶¶ 43, 44 and Ex. L. It also reported a past due amount of $66,120.00 as of December 2015, more than a year after Plaintiffs' bankruptcy discharge, and a notation of "180 days past due as of Dec. 2015, Nov. 2015." *Id.* Alan alleges that this credit report is inaccurate and that around March 10, 2016, he was "denied credit as a result of the inaccurate credit reporting."

Carolyn Handrock ("Carolyn") makes a similar complaint. Like Alan, Carolyn alleges that she was denied credit, although in her case this was a denial of a Capital One credit card around October 26, 2014.

Plaintiffs bring this lawsuit against both Experian and Ocwen, claiming that the Defendants have violated the Fair Credit Reporting Act ("FCRA"). Plaintiffs seek actual damages to compensate them for "loss of credit, increase in the price of credit, out-of-pocket expenses associated with writing dispute letters, sending certified mail, time meeting with [their] attorneys and monitoring [their] credit file, as well as mental and emotional pain and suffering." Compl. ¶ 49. Plaintiffs also pray for injunctive relief alongside other forms of monetary compensation. Compl. ¶¶ 74, 97.

## II. ANALYSIS

Plaintiffs allege that Experian violated two separate sections of the FCRA. The first, 15 U.S.C. § 1681e(b), requires a consumer reporting agency like Experian to "follow reasonable procedures to assure maximum possible accuracy" of the information it reports. This provision is operative whenever a reporting agency "prepares a consumer report." In contrast, the second provision, 15 U.S.C. § 1681i, is relevant only during "reinvestigations"; it provides steps that a reporting agency must take *after* a consumer notifies the agency that he is disputing "the completeness or accuracy of an[] item of information" contained in the consumer's credit file. *See,* 15 U.S.C. § 1681i(a)(1)(A) and 15 U.S.C. § 1681i generally.

Experian argues that Plaintiffs' Complaint fails because Plaintiffs have not pled the existence of (1) an actionable inaccuracy on a consumer credit report; (2) a consumer credit report; or (3) actual damages. The Court considers each of these arguments in turn.

### A. Inaccurate Information

To state a claim under either § 1681e(b) or § 1681i, Plaintiffs must allege that their credit reports contained inaccurate information. *See, Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir. 1994) ("In order to state a claim under 15 U.S.C § 1681e(b), a consumer must sufficiently allege that a

credit reporting agency prepared a report containing 'inaccurate' information.") (internal quotation marks omitted); *DeAndrade v. Trans Union LLC,* 523 F.3d 61, 67 (1st Cir. 2008) ("[W]ithout a showing that the reported information was in fact inaccurate, a claim brought under § 1681i must fail."); and *Hanson v. Experian Info. Sols., Inc.,* No. 10 C 2022, 2012 U.S. Dist. LEXIS 11450, at *7 (N.D. Ill. Jan. 27, 2012) (following *DeAndrade*). *See also, Bagby v. Experian Info. Sols., Inc.,* 162 F. App'x. 600, 603 (7th Cir. 2006) ("The FCRA was enacted to protect consumers from the transmission of inaccurate information.").

Experian contends that its reports of Plaintiffs' nonpayments to the Ocwen account are not actionable inaccuracies under the FCRA. In making this argument, Experian distinguishes the information shown on the first two reports from that displayed on the last report.

### *1. First Two Reports*

The first two reports showed that Plaintiffs did not make payments during the interim of their filing for bankruptcy and the entry of the Discharge Order. Experian calls these "pre-discharge delinquencies" and claims that they cannot sustain an FCRA claim. Plaintiffs, on the other hand, argue that these reports were generated after their bankruptcy discharge, and as such, any information on them that suggests Plaintiffs still owe

the debt post-discharge is false or misleading and renders the report inaccurate under the FCRA.

The issue before the Court is thus whether post-discharge reporting of pre-discharge delinquencies constitutes "inaccurate" information under the FCRA. While there is no controlling authority on this point, the Court finds *Hupfauer v. CitiBank, N.A.,* No. 16 C 475, 2016 U.S. Dist. LEXIS 112227 (N.D. Ill. Aug. 19, 2016) persuasive. In *Hupfauer,* the plaintiff received a bankruptcy discharge, sent a dispute letter to Experian, and received back an "investigation report" showing that one of her accounts was past due during the months after her bankruptcy filing but before her discharge. *Id.* at *1-5. She then sued Experian, alleging all of the same claims as Plaintiffs bring here (perhaps unsurprising as Hupfauer's counsel in that case is the same law firm representing the Handrocks here). *Id.* at *5.

Chief Judge Rubén Castillo dismissed Hupfauer's case against Experian. *Hupfauer,* 2016 U.S. Dist. LEXIS 112227 at *23. The judge concluded that Experian's investigation report was "factually accurate." *Id.* at *11-12. Hupfauer, just as the report showed, "did not make any payments on the Citi account within 150 or 180 days of February or March 2014." *Id.* The fact that Hupfauer filed for bankruptcy and had her bankruptcy plan confirmed before February 2014 did not change her account

conditions as they existed prior to her discharge. *Id.* at \*12-14.

This case is identical to *Hupfauer's* as far as the first two reports are concerned. Plaintiffs, like Hupfauer, do not allege that they made payments to Ocwen during the time between their bankruptcy filing and discharge. Instead, they, like Hupfauer, make the legal argument that Experian should not have reported a balance due, monthly payment, or delinquency for the months following the filing or confirmation of their bankruptcy plan. Judge Castillo rejected the argument in *Hupfauer*, and his is not the only court to have done so. *See, Mortimer v. Bank of Am., N.A.,* No. C-12-01959 JCS, 2013 U.S. Dist. LEXIS 51877, at \*10, 25-32 (N.D. Cal. Apr. 10, 2013) (collecting cases to reaffirm the position that "the FCRA does not prohibit accurate reporting, after discharge, of debts that were delinquent during the pendency of a bankruptcy action. Whether or not the debt was collectible, the debt existed.") (internal quotation marks omitted).

Plaintiffs have cited no persuasive authority to distinguish *Hupfauer*. None of the cases from Plaintiffs' string citation dealt with the kind of pre-discharge inaccuracies alleged here. The Court therefore finds that Plaintiffs have not stated a cognizable FCRA claim insofar as they rely on the first two Experian reports. To the extent that Plaintiffs'

claims against Ocwen rest on the same alleged inaccuracies in the two reports, they, too, must fail.

## *2. Third Report*

The Third Report, however, rescues Plaintiffs' Complaint from dismissal. Unlike the first two reports, the Third Report stated that as of December 2015 – a time after Plaintiffs' discharge – the Ocwen account had a positive balance and was past due. While the report also contained another tradeline on the same Ocwen account and this tradeline was accurate, at least one court in this district has found the duplicate tradeline to be irrelevant in determining whether the plaintiff's FCRA complaint survives dismissal. *See, Twomey v. Ocwen Loan Servicing, LLC*, No. 16-cv-0918, 2016 U.S. Dist. LEXIS 111307, at *3-4, 10-13 (N.D. Ill. Aug. 22, 2016).

Experian contends that the Third Report does not contain an actionable inaccuracy because "determining whether or not the Ocwen account was in fact discharged, is itself, a legal question, and not one Experian is required to determine under the FCRA." Experian's argument thus seems to be that had it known that the Ocwen account was discharged through bankruptcy, it would not have included the information it did on the Handrocks' credit reports, but it did not know and was not required to know under the law. Experian's argument is belied by the fact that the credit reporting agency had a duplicate

tradeline on the same Ocwen account showing that the account was discharged through bankruptcy. So Experian did know the discharged status of the account, and its argument here to the contrary is unavailing.

Furthermore, courts in this district consistently have found that the type of post-discharge information included on the Experian report gives rise to a FCRA claim. *See, e.g., Twomey,* 2016 U.S. Dist. LEXIS 111307 at *3-4, 10-13 (finding that reporting a post-discharge positive balance, past due amount, and a monthly payment obligation states a claim under the FCRA); *Jackson v. Experian Info. Sols., Inc.,* No. 15 C 11140, 2016 U.S. Dist. LEXIS 65846, at *6, 15 (N.D. Ill. May 19, 2016) (denying a motion to dismiss when a report showed a post-discharge scheduled payment amount and payment received); and *Asufrin v. RoundPoint Mortg. Servicing Corp.,* No. 15 C 9077, 2016 U.S. Dist. LEXIS 34420, at *11-12 (N.D. Ill. Mar. 17, 2016) (rejecting the defendant's argument that there were no inaccuracies when the credit reports reflected that "the subject debt had an account balance and a scheduled payment amount for March 2015 and April 2015, after the subject debt was discharged"). *See also,* Fed. Trade Comm'n, *40 Years of Experience with the Fair Credit Reporting Act* (July 2011), available at *https://www.ftc.gov/sites/default/files/documents/*

*reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf* (stating that for a debt discharged in bankruptcy, a consumer report must "report[] a zero balance to reflect the fact that the consumer is no longer liable for the discharged debt"). Judge Castillo is no exception in this case, having found that a post-discharge scheduled payment is plausibly inaccurate under the FCRA. *See, Freedom v. CitiFinancial, LLC,* No. 15 C 10135, 2016 U.S. Dist. LEXIS 97533, at *4-5, 19-20 n.5 (N.D. Ill. July 25, 2016).

Experian raises one more argument with regards to the Third Report. Relying on the fact that Plaintiffs have not disputed this report before commencing their lawsuit, Experian argues that Plaintiffs therefore have not triggered Experian's reinvestigation duties as laid out in § 1681i.

It is true that Plaintiffs did not write Experian another dispute letter after obtaining their own copies of their credit reports. However, Plaintiffs had notified Experian of their bankruptcy discharge twice and specifically disputed the accuracy of the Ocwen account prior to filing suit. Experian informed the Handrocks both times that "the Ocwen account was updated to show it was included in bankruptcy." Compl. ¶¶ 31-32, 39-40. Yet the Ocwen tradeline complained of from the Third Report, among other inaccuracies, did not mention the bankruptcy discharge at all. Under such circumstances, the Handrocks

should not be required to write to Experian yet again before being allowed to bring suit.

The sole case cited by Experian in support of its argument does not suggest otherwise. In *Ruffin-Thompkins v. Experian Info. Sols., Inc.,* 422 F.3d 603, 606, 608 (7th Cir. 2005), the Seventh Circuit found that a purported dispute letter did not trigger § 1681i's obligations when the letter included an incomplete form with requested information lines left blank. In such a situation, the credit reporting agency may determine that the complaint is frivolous and so not begin a reinvestigation. *Id.* 608. That is not the situation here. Experian did not at any point imply that the Handrocks' dispute letters were incomplete or that their dispute was frivolous.

In sum, the Court finds that the First and Second Report do not contain inaccurate information but the Third Report plausibly does and so states a claim under 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681i.

### B. Disclosure of Information to a Third-Party

In addition to pleading inaccurate information, plaintiffs looking to recovery under the FCRA must make plausible allegations that the inaccurate credit information was communicated to a third party. This is because without disclosure to a third party "there cannot be a consumer report" and "[w]ithout such a report, there could be no duty to follow

reasonable procedures regarding the report, nor could damages flow from a breach of that duty." *Wantz v. Experian Info. Sols.,* 386 F.3d 829, 833-34 (7th Cir. 2004), *abrogated on other grounds by Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 56 (2007).

Experian argues that Plaintiffs have not plausibly alleged that the reports they complained of were disclosed to any third parties besides themselves. In particular, although Plaintiffs alleged that they were denied credit, they offered "only a threadbare allegation . . . [and] no reason to think that Experian actually provided a credit report bearing inaccurate information to any third parties." However, it is reasonable to infer that companies that denied Plaintiffs credit viewed their credit reports before making the decision. This is common business practice and indeed, the reason for the existence of credit reporting agencies such as Experian. *See, About Experian,* Experian (Oct. 31, 2016), available at *http://www.experian.com/corporate/about-experian.html. See also, Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (allowing for consideration of information subject to judicial notice in deciding a Rule 12(b)(6) motion). Further, even though the Third Report may have been "prepared exclusively for, and sent exclusively to, Plaintiff[s]," as Experian asserts, the information on it was presumably available to any party that

obtained Plaintiffs' credit reports. All Plaintiffs need is to gather evidence to show that a company that denied them credit obtained such an Experian credit report before doing so. This, the Court reasonably expects that Plaintiffs will be able to do in the course of discovery. The Court therefore declines to dismiss their Complaint at this point. *See, Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007) (holding that a complaint only needs to allege "enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claim).

### C. Damages

Experian contends that Plaintiffs have not plausibly alleged that they suffered actual damages. However, because Plaintiffs here are seeking other remedies, including injunctive relief, the case may proceed even if they did not adequately plead actual damages. *See, Crabill v. Trans Union, L.L.C.,* 259 F.3d 662, 664 (7th Cir. 2001) (stating that even where a plaintiff cannot obtain an award of actual damage, he may still "obtain any other remedy, such as an injunction").

Moreover, Plaintiffs have plausibly stated a claim for actual damages. Experian calls Plaintiffs' allegations of actual damages "boilerplate," but merely because something is not creatively pled does not mean that it fails. A plausible set of facts exists under which Plaintiffs can show that a

company that denied them credit viewed an Experian credit report containing inaccurate information on the Ocwen loan before doing so. This would establish a "causal relation between the violation of the statute and the loss of credit" and entitle Plaintiffs to recover actual damages. *See, Ruffin-Thompkins*, 422 F.3d at 609 n.2. Similarly, Plaintiffs may be able to meet the "strict standard" for proving emotional damage by either providing proof of medical costs incurred or explaining the circumstances of their distress in reasonable detail. *Id.*

In sum, dismissal of Plaintiffs' Complaint is improper at this point.

### III. CONCLUSION

For the reasons stated herein, Defendant Experian Information Solutions, Inc.'s Motion to Dismiss [ECF No. 27] is denied.

**IT IS SO ORDERED.**

                                             _____
                                             Harry D. Leinenweber, Judge
                                             United States District Court

Dated: November 1, 2016